UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| TESSA KING, | ) | |
| --- | --- | --- |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 3:24-cv-324 |
| CANDI BULLOCK, | ) | Judge Travis R. McDonough |
| SOUTHERN HEALTH PARTNERS, | ) | |
| DUSTY LANGLEY, | ) | Magistrate Judge Debra C. Poplin |
| RODNEY CATHEY, | ) | |
| LOUDON COUNTY SHERIFF'S | ) | |
| DEPARTMENT, and | ) | |
| JIMMY DAVIS, | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Tessa King, a former prisoner at the Loudon County Detention Facility ("LCDF"), filed a (1) complaint under 42 U.S.C. § 1983 (Doc. 1) and (2) motions for leave to proceed *in forma pauperis* (Docs. 2, 15). For the reasons set forth below, the Court **GRANTS** Plaintiff's latest motion to proceed as a pauper (Doc. 15), **DISMISSES** the first motion as moot (Doc. 2), and **DISMISSES** Plaintiff's complaint without prejudice.

**I.     MOTIONS TO PROCEED *IN FORMA PAUPERIS***

Under 28 U.S.C. § 1915, the Court may generally "authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Although the relevant statute

specifically references the "assets such *prisoner* possesses," the Sixth Circuit has construed the statute to extend to non-prisoners who apply to proceed *in forma pauperis*. *See Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275-76 (6th Cir. 1997), *superseded by rule on other grounds as stated in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999). When assessing whether to permit an individual to proceed without paying the filing fee, the Court is not concerned with whether the applicant is destitute, but rather, "whether the court costs can be paid without undue hardship." *Foster v. Cuyahoga Dep't of Health & Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). In reaching that determination, the Court considers all the resources potentially available to the applicant, including those of a spouse or other family members. *See Ciavarella v. Comm'r of Soc. Sec.*, No. 5:13-CV-2031, 2013 WL 5354091, at *1 (N.D. Ohio Sept. 24, 2013) (citation omitted).

Plaintiff's latest motion to proceed as a pauper, which was drafted "under penalty of perjury[,]" states that Plaintiff has no monthly income and lists monthly expenses of approximately $875 (Doc. 15, at 7, 8, 11). Thus, it appears Plaintiff cannot bear the filing fee in this action without undue hardship. Therefore, the Court **GRANTS** this motion (Doc. 15) and **DISMISSES** her initial motion (Doc. 2) as moot.

## II. REVIEW OF COMPLAINT

### A. Legal Standard

Because Plaintiff is proceeding *in forma pauperis*, the Court must conduct an initial review and dismiss any action that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (quotation marks omitted); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 609 (6th Cir. 1997) (holding courts must screen complaints filed by nonprisoners

2

proceeding *in forma pauperis* under § 1915(e)(2)), *overruled on other grounds by Jones v. Brock*, 549 U.S. 199 (2007).

The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B)] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (noting the leniency granted pro se plaintiffs still requires "basic pleading standards"); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is neither "to ferret out the strongest cause of action on behalf of pro se litigants" nor to "advis[e] litigants as to what legal theories they should pursue").

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

B.      Allegations of Complaint

On August 17, 2023, Plaintiff was booked into the LCDF on a shoplifting charge (Doc. 1 p. 6). At that time, she was taking multiple prescription medications that were in her possession. (*Id.*) Two of those medications were for seizures. (*Id.*) When she arrived at the LCDF, Plaintiff requested to see the medical staff and was told, due to "her intake time[,]" that she would not be seen until the following day. (*Id.*) Thereafter, Plaintiff was "placed in a holding cell in the front of the intake area". (Id.)

The next morning, Plaintiff asked to see a nurse and was told by the LCDF staff that she would need to make a formal request on a tablet. (*Id.*) But when Plaintiff attempted to do so, there was no internet connection. (*Id.*) Plaintiff told officers that there was no internet access and again requested to see a nurse, but her request was denied. (*Id.*) Plaintiff "began experiencing severe detox and seizures due to her not being given her prescription medications." (*Id.*)

On Plaintiff's sixth day of incarceration, she was finally seen by the nursing staff, though no seizure medications were administered. (*Id.*) Plaintiff was moved to a different cell "where she continued to be denied appropriate medical care from the jail personnel and medical staff." (*Id.*) And at some point, Plaintiff was moved to the "Female Block[,]" where she had a violent seizure that "launched" her out of her bed and caused "her to hit the front of her head on the

4

concrete floor.  (*Id.*)  Nurse Candi Bullock, an employee of Southern Health Partners, was called to examine the knot on Plaintiff's forehead, and Plaintiff was moved into a separate holding cell and told to lie on a mat on the floor.  (*Id.*)  No medication was administered to Plaintiff for her seizure disorder.  (*Id.*)

In the holding cell, Plaintiff "suffered significant pain and suffering from the cold."  (*Id.*)  Inmates who were released from the facility called Plaintiff's family members and advised them that Plaintiff "resembled a 'Parkinson Patient' due to the violence of her jerking and seizure activity."  (*Id.*)  In addition, Plaintiff was suffering with "uncontrollable vomiting and diarrhea."  (*Id.*)  Eventually, Plaintiff was seen by medical staff, and Nurse Bullock prescribed Plaintiff an anti-diarrheal medication that was continued until Plaintiff's release on August 30, 2023, even though the medication was not medically necessary by the time it was prescribed.  (*Id.* at 5, 6.)  The medication "caused (Plaintiff)'s bowels to set up like concrete."  (*Id.* at 7.)

On the day of Plaintiff's court date, "she was unable to walk due to her physical and mental state."  (*Id.* at 6.)  In Plaintiff's cell were Nurse Bullock, Captain Dusty Langley, Officer Rodney Cathey, Officer Bradshaw, and an unknown female officer.  (*Id.*)  Plaintiff "repeatedly requested a drink of water and advised the employees" that she could not walk, but Plaintiff "was told to 'get up and get it yourself.'"  (*Id.*)  Officer Cathey and the unknown female officer "began verbally assaulting" Plaintiff, and when Plaintiff advised those present that she could not get up and walk to court, Officer Cathey "violently yanked" Plaintiff from the floor.  (*Id.*)  Officer Cathey is over six feet tall, while Plaintiff "is a little over (four) feet tall and weighed roughly (ninety) pounds."  (*Id.*)  Officer Cathey pulled Plaintiff's shoulder blades together, causing tendon and muscle damage in Plaintiff's back.  (*Id.*)  Plaintiff asked Officer Cathey not to drop her, as she could not walk, but Officer Cathey dropped Plaintiff, "causing her to strike the back

5

of her head and to los[e] consciousness." (*Id.*) Officers transported Plaintiff to the Fort Loudon Medical Center, "where she suffered loss of vision, hallucinations[,] and seizures." (*Id.*) Additionally, Plaintiff was so tightly shackled that she suffered contusions on her ankles and wrists. (*Id.*) When she begged officers to loosen the shackles, however, she was told they would be "tightened to the last setting" if she did not "shut up." (*Id.*)

Family members took Plaintiff back to the Fort Loudon Medical Center on September 1, 2023, after Plaintiff's release from the LCDF. (*Id.*) Plaintiff was diagnosed with post-concussion syndrome at that time. (*Id.*) "Less than a week later," Plaintiff was again taken to the hospital and diagnosed with severe dehydration. (*Id.*)

Thereafter, Plaintiff filed the instant official-capacity suit against the Loudon County Sheriff's Department, Southern Health Partners, Sheriff Jimmy Davis, Captain Dusty Langley, Officer Rodney Cathey, Nurse Candi Bullock, seeking approximately $15 million in damages (*Id.* at 7).

### C. Analysis

As noted above, Plaintiff as sued two entities—the Loudon County Sheriff's Department and Southern Health Partners—and various individual Defendants in their official capacities (*See generally* Doc. 1). Suit against the individual Defendants in their official capacities is the equivalent of suit against the entities that employ them. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (noting an official-capacity claim "seeks damages not from the individual officer, but from the entity from which the officer is an agent"). But Plaintiff cannot maintain suit against the Loudon County Sheriff's Department, as it is not a "person" subject to suit under § 1983. *See Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-CV-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal

6

courts, a sheriff's office or police department is not a 'person' subject to suit under 42 U.S.C. §1983." (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994))).

However, Loudon County is a suable entity, as is Southern Health Partners, the entity presumably contracted to provide medical care to inmates at the LCDF. But entities are liable under § 1983 only for wrongdoings caused by their own customs or policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of (its) official policies or established customs"). That is, Loudon County and/or Southern Health Partners are not subject to § 1983 liability merely because they have employed someone who violated Plaintiff's constitutional rights. *Id.* at 691 (noting entity "cannot be held liable under § 1983 on a *respondeat superior* theory"). Thus, to demonstrate that the LCDF and/or Southern Health Partners bear any liability for the wrongdoings alleged in the complaint, Plaintiff must identify a policy or custom of LCDF and/or Southern Health Partners and show that her particular injuries were incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his or her rights).

Here, Plaintiff does not allege any facts to establish that the alleged indifference to her medical needs and/or excessive use of force arose out of a policy or custom of either the LCDF or Southern Health Partners. Therefore, Plaintiff's complaint fails to state a claim under § 1983, and it must be dismissed.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's second motion for leave to proceed *in forma pauperis* (Doc. 15) is **GRANTED**, and her initial motion (Doc. 2) is **DENIED** as moot;

2. Plaintiff's complaint will be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted; and

3. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**